**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JESSIE LEE HAMM** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-5012** |
| **WARDEN KEITH DEVILLE** | **SECTION: "E"(3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Jessie Lee Hamm, is a state prisoner incarcerated at the Madison Parish Correctional Center in Tallulah, Louisiana.  On September 10, 2008, he pleaded guilty under Louisiana law to aggravated burglary and illegal possession of a firearm by a convicted felon.  On that same date, he was sentenced on the aggravated burglary conviction to a term of twenty years imprisonment and on the firearm conviction to a term of ten years imprisonment without benefit of probation, parole, or suspension of sentence.  He then also pleaded guilty to being a second offender and was resentenced as such on the aggravated burglary conviction to a term of twenty years imprisonment without benefit of probation or suspension of sentence.[1]  He did not appeal.

---

[1] State Rec., Vol. 1 of 6, transcript of September 10, 2008.

On May 4, 2009, petitioner filed with the state district court an "Out-of-Time Motion for Reconsideration of Sentence."[2]  That motion was denied on May 28, 2009.[3]  He did not seek supervisory review.

On January 23, 2014, petitioner filed with the state district court a "Motion to Amend/Modify Sentence."[4]  That motion was denied on February 3, 2014.[5]  He did not seek supervisory review.

On March 9, 2014, petitioner filed with the state district court an "Application for a Writ of Habeas Corpus."[6]  That application was denied on March 18, 2014.[7]  His related writ applications were then also denied by the Louisiana First Circuit Court of Appeal on July 28, 2014,[8] and by the Louisiana Supreme Court on June 1, 2015.[9]

On April 27, 2014, petitioner filed with the state district court an "Application for an Out-of-Time Appeal/Post-Conviction Relief."[10]  That application was denied on May 1, 2014.[11]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on July 14, 2014,[12] and by the Louisiana Supreme Court on May 15, 2015.[13]

---

[2] State Rec., Vol. 1 of 6.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Because that date cannot be gleaned from the state court record with respect to the *pro se* filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed. In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the file-stamp placed on the document by the clerk of court.  Any slight imprecision resulting from this method is ultimately of no consequence because, even under the most generous calculations, petitioner's application is untimely by many months.

[3] State Rec., Vol. 1 of 6, Order dated May 28, 2009.

[4] State Rec., Vol. 1 of 6.

[5] State Rec., Vol. 1 of 6, Order dated February 3, 2014.

[6] State Rec., Vols. 1 and 2 of 6.

[7] State Rec., Vol. 2 of 6, Order dated March 18, 2014.

[8] State v. Hamm, No. 2014 KW 0477 (La. App. 1st Cir. July 28, 2014); State Rec., Vol. 4 of 6.

[9] State *ex rel.* Hamm v. State, 171 So.3d 928 (La. 2015); State Rec., Vol. 4 of 6.

[10] State Rec., Vol. 2 of 6.

[11] State Rec., Vol. 2 of 6, Order dated May 1, 2014.

[12] State v. Hamm, No. 2014 KW 0685 (La. App. 1st Cir. July 14, 2014); State Rec., Vol. 2 of 6.

[13] State *ex rel.* Hamm v. State, 170 So.3d 156 (La. 2015); State Rec., Vol. 5 of 6.

On June 6, 2014, petitioner filed with the state district court an application for post-conviction relief.[14] That application was denied on June 10, 2014.[15] His related writ applications were then denied by the Louisiana First Circuit Court of Appeal on September 8, 2014,[16] and by the Louisiana Supreme Court on September 25, 2015.[17]

On October 6, 2014, petitioner filed with the state district court a "Motion for an Out-of-Time Appeal."[18] That motion was denied on October 28, 2014.[19] His related writ applications were thereafter also denied by the Louisiana First Circuit Court of Appeal on January 12, 2015,[20] and by the Louisiana Supreme Court on November 20, 2015.[21]

In the interim, petitioner filed the instant federal application seeking *habeas corpus* relief on October 1, 2015.[22] The state filed a response arguing that petitioner's application should be dismissed as untimely,[23] and petitioner filed a reply to that response.[24]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[14] State Rec., Vol. 2 of 6.
[15] State Rec., Vol. 2 of 6, Order dated June 10, 2014.
[16] State v. Hamm, No. 2014 KW 0950 (La. App. 1st Cir. Sept. 8, 2014); State Rec., Vol. 6 of 6.
[17] State *ex rel.* Hamm v. State, 178 So.3d 157 (La. 2015); State Rec., Vol. 6 of 6.
[18] State Rec., Vol. 2 of 6.
[19] State Rec., Vol. 2 of 6, Order dated October 28, 2014.
[20] State v. Hamm, No. 2014 KW 1651 (La. App. 1st Cir. Jan. 12, 2015); State Rec., Vol. 2 of 6.
[21] State *ex rel.* Hamm v. State, 178 So.3d 984 (La. 2015).
[22] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Under penalty of perjury, petitioner stated that he placed his petition in the prison mailing system on October 1, 2015. Rec. Doc. 1, p. 15.
[23] Rec. Doc. 9.
[24] Rec. Doc. 12.

> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In the instant case, Subsections C and D are obviously inapplicable because petitioner's claims do not concern a newly recognized constitutional right or a newly discovered factual predicate.

Whether Subsection B applies, however, requires careful consideration. Petitioner argues that his ability to seek relief was hampered by the fact that he did not have access to an adequate law library. The state argues that that petitioner has failed to establish that Subsection B applies. For the following reasons, the state is correct.

It is true that, in some circumstances, that "an inadequate prison law library may constitute a state created impediment" for purposes of Subsection B. Egerton v. Cockrell, 334 F.3d 433, 439 (5th Cir. 2003). However, "[w]hether a prisoner has demonstrated the existence of a state-created impediment is highly fact dependent." Funk v. Thaler, 390 Fed. App'x 409, 410 (5th Cir. 2010).

Because petitioner's original allegations that he was prevented from timely seeking relief due to a lack of access to an adequate law library were impermissibly vague, the Court gave him an opportunity to develop the relevant facts supporting his contention. See Thames v. Wilson, 179 Fed. App'x 241, 242 (5th Cir. 2006). Specifically, the Court issued an Order directing petitioner to supplement his federal application with a sworn affidavit detailing the respects in which the law libraries or legal assistance programs at the St. Tammany Parish Prison and the Madison Parish Correctional Center were inadequate and further explaining how the inadequacies prevented him

from seeking relief in a timely fashion.[25]  Petitioner thereafter submitted an affidavit,[26] and the

state filed a reply to rebut petitioner's allegations.[27]

Based on the evidence presented, the Court must determine whether the situation petitioner

describes falls within Egerton so that petitioner is entitled to a delayed commencement of the

statute of limitations pursuant to 28 U.S.C. § 2244(d)(1)(B).  For the following reasons, the

undersigned finds that it does not.

Since 2003, when the United States Fifth Circuit Court of Appeals first ruled in Egerton

that an inadequate prison law library may constitute a state-created impediment for purposes of

Subsection B, courts have struggled with the intended scope of that decision.  For the most part,

courts have determined that Egerton was an unusual case based on egregious facts and, therefore,

its scope was limited.  For example, one court observed:

> In making that ruling [in Egerton], the Court stopped short of permitting a
> dearth of research material to excuse every late filing, concluding, "an inadequate
> prison law library *may* constitute a state created impediment that would toll the
> AEDPA's one-year limitations period pursuant to § 2244(d)(1)(B)." [Egerton, 334
> F.3d] at 439 (emphasis added).  In Egerton, no copy of the AEDPA was available
> in the prison, but the prisoner promptly filed his state, and then his federal, habeas
> petitions after being moved to a facility with an adequate law library.  As the district
> court stated in Neal v. Bradley, Civil Action No. 2:05cv67, 2006 WL 2796404 at
> *2 (N.D. Miss., Sept. 25, 2006), the rule adopted in Egerton is "extremely
> circumscribed," and inmates are attempting to expand its holding far beyond the
> narrow set of facts to which it applies.  Egerton was incarcerated prior to 1996, and
> was unaware of AEDPA's passage; and since his facility had no copy of the
> AEDPA, he had no way of learning of its passage until after the limitations period
> had run.  Id. at *3.

Madison v. Scott, Civ. Action No. 11-cv-00243, 2011 WL 7561510, at *3 (Miss. S.D. Aug. 4,

2011), adopted, 2012 WL 930932 (S.D. Miss. Mar. 19, 2012); accord Coleman v. Warden

Louisiana State Penitentiary, Civ. Action No. 04-0494, 2007 WL 2350270, at *3 (W.D. La. July

---

[25] Rec. Doc. 14.
[26] Rec. Doc. 15.
[27] Rec. Doc. 18.

23, 2007) ("The holding in Egerton has been described as 'extremely circumscribed' and not

subject to expansion far beyond the narrow and unusual set of facts presented in that case.")

(adopted by Hicks, J., on August 15, 2007).  Another court observed:  "Now that the AEDPA has

been in effect for over a decade, it is unlikely that a prisoner could successfully rely upon Egerton,

which was fact-specific to a prisoner dealing with a new law and no copy of the statute."  Romero

v. Thaler, No. 2:10-CV-075, 2010 WL 2366025, at *3 (N.D. Tex. May 25, 2010), adopted, 2010

WL 2366033 (N.D. Tex. June 11, 2010).

Moreover, in 2011, the United States Fifth Circuit Court of Appeals revisited Egerton and

noted the difficulty of falling within the narrow scope of that opinion:

> To invoke tolling under § 2244(d)(1)(B), [a petitioner] "must show that:  (1) he was
> prevented from filing a petition (2) by State action (3) in violation of the
> Constitution or federal law."  Egerton v. Cockrell, 334 F.3d 433, 436 (5th Cir.
> 2003).
>     To prevail, [a petitioner] must allege more than that the library was
> inadequate.  The Supreme Court has stated:
>
>> an inmate cannot establish relevant actual injury simply by
>> establishing that his prison's law library or legal assistance program
>> is subpar in some theoretical sense ....  [T]he inmate must go one
>> step further and demonstrate that the alleged shortcomings in the
>> library or legal assistance program hindered his efforts to pursue a
>> legal claim.
>
> Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (noting
> that there is no "abstract, freestanding right to a law library or legal assistance");
> see also Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) ("It is not enough to
> say that the Minnesota facility lacked all relevant statutes and case law or that the
> procedure to request specific materials was inadequate.").  Rather, he must also
> show that the lack of adequate legal materials actually *prevented* him from timely
> filing his habeas petition.  See Felder [v. Johnson], 204 F.3d [168,] 171 n. 9 (5th
> Cir. 2000) (holding that where a prisoner filed his habeas petition before he had
> access to AEDPA, the lack of access to AEDPA was not an did not prevent him
> from filing an application); see also Balawajder v. Johnson, 252 F.3d 1357, 2001
> WL 422873, at *1 (5th Cir. 2001) (unpublished) (holding that absence of AEDPA
> from prison library was not an impediment where the record reflected the prisoner's
> actual awareness of AEDPA before the tolling period expired); cf. Egerton, 334
> F.3d at 435 (noting that the court remanded on the issue of "whether [the prisoner]

6

was aware of the existence of AEDPA prior to the expiration of the limitations period").

Krause v. Thaler, 637 F.3d 558, 560-61 (5th Cir. 2011).

As a preliminary matter, the Court notes that the relevant inquiry therefore is *not* whether the St. Tammany Parish Jail and the Madison Parish Correctional Center had comprehensive law libraries or robust legal assistance programs. If that were the test, then there would effectively be *no* enforceable statute of limitations in habeas cases because one can safely assume that the vast majority, if not all, of the parish and state penal facilities in Louisiana have limited law libraries and/or legal assistance services. Rather, the inquiry is *only* whether a petitioner has shown that the deficiencies actually *"prevented"* him from seeking relief in a timely manner.

Here, petitioner has not made that showing. As noted, the undersigned ordered petitioner to supplement his federal application with a sworn affidavit. Petitioner was specifically instructed that his affidavit must include, *inter alia*, statements as to (1) whether law libraries or legal assistance programs were available **at all** at the facilities in question and (2) what legal assistance he requested, approximately when and to whom the requests were made, and the responses he received to those requests.[28] Although petitioner has submitted an affidavit, not all of the specified information was included.

For example, for the first *seven months* after petitioner pleaded guilty and was sentenced on September 10, 2008, he was confined at the St. Tammany Parish Jail. In his affidavit, petitioner stated that there was no law library or legal assistance program at the jail; however, he then immediately hedged by stating "*[i]f there was,* there was no posted policy that informed inmates

---

[28] Rec. Doc. 14.

of such legal assistance programs."[29]   In any event, petitioner did not state that he ever inquired whether such resources were available or requested *any* type of legal assistance.

Nevertheless, it is apparent that he did not do so.   In connection with its rebuttal to petitioner's affidavit, the state submitted the affidavit of Major Gregory Longino, the facility's warden, which stated:

> My review of Inmate Jessie Lee Hamm's administrative file indicates that Inmate Jessie Lee Hamm did not any time during his incarceration at the St. Tammany Parish jail request legal materials or legal assistance.  Inmate Hamm did not request legal materials or legal assistance using the Inmate Complaint Procedure, and he did not request legal materials or legal assistance using the Administrative Remedy Procedure.[30]

Moreover, it certainly cannot be doubted that petitioner was aware of the method for making his needs known.   His records from that facility show that he submitted numerous complaints concerning a wide array of relatively trivial matters (from food service issues, such as a lack of bananas, to insufficient access to outside recreation) – however, he failed to submit even a single complaint alleging that he was being denied access to legal materials or legal assistance. The closest he ever came to that issue was a passing reference made in a request that he be transferred to another facility, in which he stated, "I have to get somewhere that I can better myself and research my case."[31]

Because petitioner has not established that he ever requested, much less was denied, access to legal materials or legal assistance at the St. Tammany Parish Jail, he cannot reasonably argue that the state's failure to provide such resources "prevented" him from seeking relief while he was incarcerated at that facility.

---

[29] Rec. Doc. 15, p. 3 (emphasis added)
[30] Rec. Doc. 18-1, p. 3.
[31] Rec. Doc. 18-2, p. 44.

Petitioner's allegations with respect to the Madison Parish Correctional Center (where he was transferred on April 9, 2009, and has remained since) are only marginally better. Even if the Court assumes for the purposes of this decision that the transfer made it more difficult for petitioner to seek relief, he has not shown that the conditions were such that that he was effectively "prevented" from doing so. For example, in his affidavit, petitioner conceded that the jail had a law library, although he complained that he was hampered by the fact that he had to be transported to another building to use it.[32] However, again, he offered no specifics as to how many times he requested but was denied access to the library. Rather, he only vaguely stated that guards were reluctant to transport prisoners to the law library and that they did not do so as regularly as policy required.[33] Lastly, he conceded that he was in fact given access to the law library on various occasions, although he complained that, even then, the library and legal assistance was subpar.[34]

---

[32] He stated:

> Upon arrival to Madison Correctional, the petitioner was assigned to be housed at <u>Southern Correctional Center, Building #4</u>, which does not have a law library <u>at all</u>.
> However, there is law library down the street at <u>Building #3 M.C.C.</u> Correctional officers have to shackle offenders and transport them V.I.A. van, from Southern Correctional to Madison Correctional. Due to this design, correctional officers limited the number of offenders to 2-6 inmates out of a dormitory that house [120] one hundred and twenty inmates.

Rec. Doc. 15, p. 3.

[33] He stated:

> [B]y posted policy offenders are <u>supposed</u> to go to the law library once a week for 2 ½ hours.
> During the periods in question, there was no administrative warden over the facility to enforce administrative rules and policy to provide inmates with adequate access to a law library and/or legal assistance. Due to this, correctional officers did not comply with the facility's policy, nor would respond to any inmate grievance or A.R.P.s. So, on average, during having no warden, correctional officers would transport offenders to the law library at M.C.C. <u>maybe</u> once a month and then would limit how many offenders out of the <u>120</u> man dorm to <u>2-6</u> offenders because they have to shackle them and put them in a van, so, the petitioner may or may not get to go for months at a time.

Rec. Doc. 15, p. 3.

[34] He stated:

> When the petitioner was able to get to the law library, the law library lacked legal materials essential to offenders appealing their case. The "trustee" in the law library would not allow anyone else on the computer and said he could only print out cases and there was only Louisiana cases on

9

In summary, a petitioner is entitled to a delayed commencement of the AEDPA's limitations period under Subsection B only if he shows that the state-created impediment prevented him from seeking relief in a timely manner.  Here, petitioner has not sufficiently established that he was prevented from filing timely due to inadequate access to a law library or legal assistance program.  For the first six months after his conviction became final, he was incarcerated at the St. Tammany Parish Jail, and he has offered no proof that he ever requested or was denied legal assistance during that period.  For the remaining six months of his one-year period, he was incarcerated at the Madison Parish Correctional Center, where he concedes that a law library existed.  Although he claims that access to the law library was difficult to obtain, he has provided no specific information concerning his efforts to gain access.  Moreover, although he alleges that the law library was subpar, that, alone, does not trigger Subsection B.  Krause v. Thaler, 637 F.3d 558, 561 (5th Cir. 2011).  Rather, a petitioner must demonstrate that the law library was so inadequate that he could not have sought relief, and he clearly has not made that showing.  Therefore, the undersigned finds that the state is correct in arguing that Subsection B does not apply in this case.

---

the computer, no federal cases.  There was only one Louisiana Criminal Code 2006 that was missing sections, including an entire La. C. Cr. P. articles section.  No Federal Civil Code and no United States Code Annotated which is essential to subjects such as Habeas Corpus and Section 1983. There was no Louisiana Annotated Statutes which is essential to offenders appealing their case, including filing P.C.R.  There were books with state and federal cases from that year on the shelf. A 1989 Louisiana Civil Code and a Federal Criminal Code which was also missing entire sections. All in all, the only legal materials that assisted petitioner were the state cases.  And if petitioner did not have the citation for a specific case or for a specific subject, looking for the same is like looking for a needle in a hay stack, because petitioner would grab state book after state book looking for something that would help him in pursuing his claims.  Which made things more difficult because petitioner could not get to the law library and no one to help him in the law library.

Rec. Doc. 15, pp. 4-5.

That said, the Court also notes that the state alternatively argues that, *even if Subsection B were found to apply, petitioner's application would still be untimely.  For the following reasons, the state is also correct on that point.*

Petitioner concedes that the purported impediment was removed as of January 1, 2014, when the LaSalle Management Corporation assumed control of the Madison Parish Correctional Center.[35]  Therefore, even if Subsection B applies, petitioner's federal limitations period commenced no later than that date and then expired one year later, unless that deadline was extended by tolling.

The Court first considers statutory tolling.  Regarding the statute of limitations, the AEDPA expressly provides:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

After twenty-one (21) days elapsed, petitioner tolled the limitations period on January 23, 2014, by filing a "Motion to Amend/Modify Sentence" with the state district court.[36]  That motion was then denied on February 3, 2014.[37]  As result, tolling then ceased thirty days later on March 5, 2014, when his period expired for seeking review of that denial by the Louisiana First Circuit Court of Appeal.  See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004) (a state application ceases to be pending when the time for supervisory review expires).[38]

---

[35] Rec. Doc. 15, pp. 6-7.

[36] State Rec., Vol. 1 of 6.

[37] State Rec., Vol. 1 of 6, Order dated February 3, 2014.

[38] A litigant has thirty days to seek review by a Louisiana Court of Appeal.  See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007).

When his federal limitations period resumed running at that point, petitioner had three hundred forty-four (344) days remaining, i.e. until February 12, 2015, either to again toll the federal limitations period or to file his federal habeas corpus application.  During that period, petitioner filed four additional applications for "State post-conviction or other collateral review": an "Application for a Writ of Habeas Corpus" filed on March 9, 2014;[39] an "Application for an Out-of-Time Appeal/Post-Conviction Relief" filed on April 27, 2014;[40] an application for post-conviction relief on June 6, 2014;[41] and a "Motion for an Out-of-Time Appeal" filed on October 6, 2014.[42]  However, *none* of those filings tolled the federal limitations period because they were ultimately denied by the Louisiana Supreme Court as *untimely* under La. Code Crim. P. art. 930.8 on June 1, 2015,[43] May 15, 2015,[44] September 25, 2015,[45] and November 20, 2015,[46] respectively. As the United States Supreme Court has expressly held, when a state post-conviction filing is rejected by the state courts as untimely, it cannot be considered "properly filed" within the meaning of § 2244(d)(2) and therefore does not toll the limitations period.  Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005).  Simply put: when a post-conviction filing is untimely under state law, "that is the end of the matter for purposes of § 2244(d)(2)."  Id. at 414 (quotation marks and brackets omitted).

The Court is, of course, aware that petitioner opines that the Louisiana Supreme Court failed to appropriately take into account his circumstances and, therefore, erred in finding his

---

[39] State Rec., Vols. 1 and 2 of 6.
[40] State Rec., Vol. 2 of 6.
[41] State Rec., Vol. 2 of 6.
[42] State Rec., Vol. 2 of 6.
[43] State *ex rel.* Hamm v. State, 171 So.3d 928 (La. 2015); State Rec., Vol. 4 of 6.  Out of an abundance of caution, the Court notes that the Southern Reporter erroneously indicates that the Louisiana Supreme Court denied relief without assigning reasons; however, the official ruling of the Louisiana Supreme Court, which is included in Volume 4, cites La. Code. Crim. P. art 930.8 and State *ex rel.* Glover v. State, 660 So.2d 1189 (La. 1995), as the basis for the decision.
[44] State *ex rel.* Hamm v. State, 170 So.3d 156 (La. 2015); State Rec., Vol. 5 of 6.
[45] State *ex rel.* Hamm v. State, 178 So.3d 157 (La. 2015); State Rec., Vol. 6 of 6.
[46] State *ex rel.* Hamm v. State, 178 So.3d 984 (La. 2015).

applications untimely under article 930.8.  However, to the extent that petitioner is arguing that this Court should disregard the Louisiana Supreme Court's rulings finding his applications untimely, that would be inappropriate for two reasons.

First, it would be improper for this federal court to second-guess the Louisiana Supreme Court regarding the interpretation and application of article 930.8.  Because that article is a provision of state law, its interpretation is left to the state courts. See, e.g., Hill v. Tanner, Civ. Action No. 12-369, 2012 WL 4059899, at *11 n.41 (E.D. La. July 5, 2012), adopted, 2012 WL 4059898 (E.D. La. Sept. 14, 2012).  It is beyond cavil that the state courts are the final arbiters of state law.  See Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co., 706 F.3d 622, 629 (5th Cir. 2013) ("The principle that state courts are the final arbiters of state law is well-settled."); see Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly interpreted its own law.  When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions *are* state law.").

Second, the United States Supreme Court has created a tool prisoners can use to protect their federal filing date if they, like the instant petitioner, faced a prospect of their state applications being denied as untimely:  a "protective" federal petition.  The Supreme Court explained:

> [Petitioner] claims that a "petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,'" and thus that his federal habeas petition is time barred.  A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.  A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court.

Pace, 544 U.S. at 419 (citations omitted).  Petitioner did not avail himself of this tool and, therefore, he may not now complain that it is unfair to deny him tolling credit under § 2244(d)(2) for state applications which were deemed improperly filed by the state courts.

Accordingly, because those four applications did not toll the federal limitations period, and because petitioner had no other applications for "State post-conviction or other collateral review" pending at any time on or before February 12, 2015,[47] he clearly is not entitled to further statutory tolling.

The Court must next consider equitable tolling.  The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling.  Holland v. Florida, 560 U.S. 631, 645 (2010).  However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").  A petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

In the instant case, petitioner argues that he is entitled to equitable tolling.  For the following reasons, the Court rejects that argument.

---

[47] The Court notes that petitioner did have a motion for production of documents pending during this period which was ultimately denied by the Louisiana Supreme Court on March 6, 2015.  State ex rel. Hamm v. State, 161 So.3d 12 (La. 2015); State Rec., Vol. 3 of 6. However, such motions are not considered applications for "State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence. Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n.22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003); Boyd v. Ward, Civ. Action No. 01493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001).

First, petitioner argues that "he did not know how to properly appeal his case and proper motions to file."[48]  However, it is clear that a prisoner's *pro se* status, lack of legal training, and mere ignorance of the law do not constitute rare and exceptional circumstances warranting equitable tolling.  See, e.g., Felder v. Johnson, 204 F.3d 168, 171-72 (5h Cir. 2000); accord Gonzales v. Wilkinson, 269 Fed. App'x 481, 486 (5th Cir. 2008).

Second, petitioner also once again argues that he did not have access to an adequate law library.  However, as already noted, he has not established that he was denied adequate access. Further, in any event, even if he were entitled to equitable tolling on that basis, the equitable tolling would have ended as of January 1, 2014, the date on which even he concedes that the impediment was removed.  Therefore, equitable tolling would not gain petitioner any time in addition to that which he was already entitled under Subsection B.

Lastly, the Court also notes that the United States Supreme Court has held:  "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).  Here, petitioner claims that he is actually innocent.[49]

However, the Supreme Court expressly cautioned in McQuiggin that "tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  Id. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  For the following reasons, the undersigned finds that petitioner has not made such a showing in this case.

---

[48] Rec. Doc. 1, p. 14; Rec. Doc. 1-1, pp. 6-9.
[49] Rec. Doc. 1-1, pp. 37-39.

Even if <u>McQuiggin</u> applies in the context of a guilty plea, a point which is by no means clear,[50] petitioner has not made a colorable showing that he is actually innocent in light of "new evidence."   On the contrary, by entering his unconditional pleas, he has already conceded under oath that he in fact committed and was guilty of the crimes of which he stands convicted. Moreover, a petitioner must present highly reliable "new evidence" to support a colorable actual innocence claim – for example, evidence such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" – and "[b]ecause such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." <u>Schlup</u>, 513 U.S. at 324.  Here, petitioner presents no new evidence of the type or caliber referenced in <u>Schlup</u>, and, therefore, he has not met aforementioned "threshold requirement" for <u>McQuiggin</u> to apply.  Accordingly, <u>McQuiggin</u> does not aid petitioner.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the <u>McQuiggin</u> "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than February 12, 2015, *even if* the commencement of the statute of limitations was delayed under 28 U.S.C. § 2244(d)(1)(B).[51]   His federal application was not filed until October 1, 2015, and, therefore, it is untimely.

### RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for *habeas corpus* relief filed by Jessie Lee Hamm be **DISMISSED WITH PREJUDICE**.

---

[50] Some courts have held that <u>McQuiggin</u>'s actual innocence exception does not apply where the petitioner pleaded guilty.  <u>See, e.g.</u>, <u>Jackson v. United States</u>, No. 13-CV-818, 2013 WL 5295701, at *3 (E.D. Wis. Sept. 18, 2013); <u>Sidener v. United States</u>, No. 11-CV-3085, 2013 WL 4041375, at *3 (C.D. Ill. Aug. 8, 2013).

[51] **Of course, if the undersigned is correct in concluding that Subsection B does not apply, then, by default, Subsection A applies.  However, because petitioner's application would be untimely even under Subsection B, then it would necessarily also be untimely if the earlier commencement date of Subsection A is applicable.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[52]

New Orleans, Louisiana, this nineteenth day of April, 2016.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[52] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.